IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| JOHN RATHER, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| vs. | ) ) | Case No. 13-cv-308-TLW |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff John Rather seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 11). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 54-year old male, protectively filed for benefits under Title II on May 9, 2011, and under Title XVI on May 23, 2011. (R. 176-186). Plaintiff alleged a disability onset date of June 1, 2009. Id. Plaintiff claimed that he was unable to work due to "liver failure, constant diarrhea, acute hepatitis C, hepatitis B, partial removal of liver, bowel, and appendix in 1991, diabetes, [and] severe weight loss (50lbs)." (R. 216). Plaintiff's claims for benefits were denied initially on September 1, 2011, and on reconsideration on January 13, 2012. (R. 99-107; 111-114). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 121). The ALJ held the hearing on July 11, 2012. (R. 34-49). The ALJ issued a decision on January 18, 2013, denying benefits. (R. 10-26). The Appeals Council denied review, so the ALJ's January 18, 2013 decision is the final decision of the Commissioner. (R. 1-5). Plaintiff timely filed an appeal. (Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since his alleged disability onset date of June 1, 2009. (R. 15). His last insured date was determined to be December 31, 2014. Id. The ALJ found that plaintiff had the severe impairments of "diabetes, anxiety disorder NOS, depressive disorder NOS, [and] personality disorder NOS." Id. The ALJ found that plaintiff's left shoulder injury, his history of hepatitis, and his back pain were not supported by the record as severe impairments. (R. 15-16). After analyzing the "paragraph B"

criteria, the ALJ found that plaintiff experienced mild restriction in activities of daily living; moderate restriction in social functioning; moderate difficulty with concentration, persistence, and pace; and no episodes of decompensation. (R. 16-17). Plaintiff's impairments did not meet or medically equal a listed impairment. Id.

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff could perform

> a full range of work at all exertional levels but with the following nonexertional limitations: He should avoid unprotected heights, never use ladders or scaffolds, and frequently climb stairs and ramps. He retains the ability to understand and remember simple instructions, maintain concentration, persistence and pace to complete simple tasks in a work environment that limits contact with the general public and coworkers to no more than superficial. He can adequately relate to supervisors and can adapt to normal changes in work environment with the above limitations.

(R. 17). The ALJ then found that plaintiff's residual functional capacity allowed him to return to his past relevant work as a welder, production line. (R. 24). Alternately, at step five, the ALJ determined that jobs existed in significant numbers which plaintiff could perform, such as metal spraying machine operator (medium), industrial cleaner (medium), bottling-line attendant (light), bench assembler (light), collator operator (light), final assembler (sedentary), and patcher (sedentary). (R. 25-26). The ALJ noted that he "considered counsel's response to evidence from the medical expert and the vocational expert," the additional interrogatories from plaintiff's counsel "to the degree they were appropriate," and plaintiff's final response to the interrogatories that no further hearings, comments, or actions were necessary. (R. 26). Accordingly, the ALJ found that plaintiff was not disabled. Id.

**The Medical Evidence**

The ALJ provided a thorough discussion of all of plaintiff's medical evidence. This is plaintiff's third application for benefits. He previously received benefits from 1993 to 1997

3

based on alcohol and drug abuse. (R. 18). Those benefits were terminated in 1997, and plaintiff returned to gainful employment. His second application was medically denied in 2010. Id.

Although plaintiff did not allege any mental impairment on his application forms, the Social Security Administration sent plaintiff to a consultative mental examination with Kevin Whisman, Ph.D. on April 15, 2010, based on allegations from plaintiff's sister that he was depressed. (R. 387-89). After examination, Dr. Whisman diagnosed plaintiff with generalized anxiety disorder, personality disorder NOS, and assessed a GAF score of 64. (R. 389).

Plaintiff was diagnosed by Dr. Stephens with terminal hepatitis on May 4, 2011, after presenting at the hospital with jaundice. (R. 391). Dr. Stephens provided plaintiff with a statement that he had six months to live. (R. 438). However, by November 2011, no evidence of chronic hepatitis was found in plaintiff's system. (R. 491).

According to the record, plaintiff received unemployment benefits in 2010 and 2011. (R. 23, 202-206). The ALJ noted in his credibility determination that plaintiff received unemployment benefits, and a condition to obtain unemployment benefits is the representation that you are able and available to sustain full time work. (R. 23).

In 2010, plaintiff complained of shoulder pain from falling off a ladder in 2009. He did not seek treatment at the time of his accident. Plaintiff presented to Dr. Al-Shathir for an agency consultative examination six months after the injury on April 13, 2010. Examination results were unremarkable, but did show some reduced range of motion. (R. 18, 380-84). Subsequent shoulder x-rays on October 20, 2011, November 4, 2011 and May 17, 2012 were normal. (R. 18, 19, 20, 21, 22, 23, 491, 499, 551). He received a shoulder injection from Dr. Michele Myers (formerly Dr. Prebyl) on November 4, 2011 which relieved his pain for approximately five months. (R. 491, 550). He returned to Dr. Myers on May 17, 2012 for an additional shoulder

4

injection because he was moving into a new house with his girlfriend and wanted to "be able to lift things during his upcoming move." (R. 550).

On October 25, 2011, plaintiff received a second mental consultative examination from Stanley Mintz, Ph.D. (R. 482-85). During this examination, plaintiff recounted numerous incarcerations for drug offenses and driving while impaired. Dr. Mintz noted that plaintiff "appear[ed] somewhat reluctant to do this exam." (R. 483). Dr. Mintz said that plaintiff "appear[ed] to function within the borderline intellectual range. He does not strike me as being mentally retarded nor does he appear to be exhibiting symptoms of a cognitive disorder." (R. 484). Plaintiff's formal judgment and reasoning skills were intact, he appeared to function in the "borderline intellectual range," his immediate attention span was fair, and his short and long term memory processes were fair. (R. 484-85). Dr. Mintz opined that plaintiff "would have difficulty … doing sustained full-time work particularly due to symptoms of anxiety and of a personality disorder." Dr. Mintz went on to say that plaintiff appeared "able to understand simple and intermediate instructions," and that in his opinion, plaintiff was incapable of handling his own funds "due to significant problems with substance abuse." (R. 485).

On March 3, 2012, plaintiff experienced a motorcycle wreck, laying his motorcycle over trying to avoid an accident, and injured his ribs, face, and knee. (R. 520). Testing after this wreck showed some mild degenerative disease of the cervical spine "without acute abnormality." (R. 20, 522-533). He was diagnosed with a concussion and checked himself out of the hospital against medical advice. (R. 521).

Dr. Myers referred plaintiff to Janet Smith, Ph.D. for psychological testing because of memory problem complaints. Dr. Smith performed the Wechsler Memory Scale-IV and Wechsler Abbreviated Scale of Intelligence on May 11, 2012. (R. 547-48). Dr. Smith reported

5

that the test results were "moderately valid" because plaintiff "appeared to give up quickly on many items." (R. 548). She also noted that plaintiff showed no abnormalities in mood, speech, or behavior. (R. 547). Dr. Smith opined that while plaintiff's current functioning level was estimated as below average, she believed he previously functioned at a higher level. (R. 548).

## ANALYSIS

Plaintiff raises four issues on appeal. First, plaintiff argues that the ALJ failed to properly evaluate whether plaintiff met the requirements of Listing 12.05 at step three. Second, plaintiff claims that the ALJ violated his right to due process by not allowing his attorney to fully cross-examine the vocational witness. Third, plaintiff argues that the ALJ's RFC determination is improper because he failed to consider all of plaintiff's non-severe impairments. Finally, plaintiff alleges that the ALJ improperly found that he was capable of performing past relevant work as a welder, and that the job did not meet the requirements of past relevant work.

### Listing 12.05

Plaintiff argues that the ALJ "fail[ed] to consider whether [he] met Listing 12.05." Specifically, plaintiff contends that his low IQ scores, paired with his "other severe impairments" allow him to meet the criteria for paragraph C of this Listing. However, the regulations are clear that in order to meet Listing 12.05, evidence of onset of "intellectual disability" prior to age twenty-two is necessary. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In this regard, plaintiff relies on McKown v. Shalala, 5 F.3d 546 (10th Cir. 1993) (unpublished table decision) for the proposition that "a claimant 'is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two so long as there [is] no evidence that claimant's IQ had changed.'" Id. at *3, (dkt. 28 at 5). The language in McKown is actually quoted from an unpublished Southern District of Florida Order affirming a Report and Recommendation and is

not binding here. See Gant v. Sullivan, 773 F.Supp. 376 (S.D.Fla. 1991) (unpublished). In any event, there is substantial evidence in the record to support the ALJ's determination that plaintiff did not meet the IQ requirements prior to age twenty-two.

Plaintiff seems to concede that there is no indication in the record that plaintiff suffered from an intellectual disability before he turned twenty-two years of age. Thus, plaintiff relies on McKown, arguing that he currently meets the IQ requirements and there is no evidence that his intellectual functioning has changed. As a result, plaintiff concludes that he need not affirmatively establish that he met the requirements prior to age twenty-two. However, there is both substantial evidence in the record that plaintiff's intellectual functioning did not meet the Listing 12.05 requirements prior to turning twenty-two and there is substantial evidence that he did not meet the requirements even after turning twenty-two.

The ALJ discussed plaintiff's May 11, 2012 self-report, which he made during psychological testing with Dr. Smith. (R. 21, 547-48). Plaintiff's self-reporting reveals that he previously functioned at a higher level than he exhibited during the test. Id. ("He reported his memory changed about 2 years ago. … The memory impairment began after he hit his head due to falling from a ladder but he was uncertain if the fall is a causal factor." (R. 547). "He believes that his premorbid memory functioning was generally normal, … he was able to maintain full-time employment at a custom fiberglass factory…" (R. 545).) In fact, the record reflects that prior to injuring his shoulder (at which time he was fifty-two years old), plaintiff worked as a "lead man in assembly" at Carter's Custom Fiberglass, a semi-skilled job. (R. 40, 207, 347, 545). In addition, Dr. Mintz found that although plaintiff "appear[ed] to function within the borderline intellectual range[,] [h]e does not strike me as being mentally retarded nor does he appear to be exhibiting symptoms of a cognitive disorder." (R. 484). Dr. Mintz concluded that plaintiff's

formal judgment and reasoning skills appeared intact and that his immediate attention span appeared fair, and his short and long term memory processes appeared fair. (R. 484-85). The record also reflects that plaintiff did not attend any special education classes in high school. (R. 217). Thus, there is substantial evidence in the record which indicates that plaintiff did not meet the Listing 12.05 requirements either prior to or after he attained the age of twenty-two. For this reason, plaintiff failed to satisfy his burden of proof at step three.

As a final note, the Commissioner argues that any potential error by the ALJ in not specifically considering Listing 12.05 is harmless because the ALJ properly considered and discussed plaintiff's mental functioning and IQ scores at later steps. (Dkt. 29). This argument is also persuasive. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (discussing harmless error).

**Due Process**

Plaintiff argues that his right to due process was violated because the ALJ, without explanation, failed to present two of his interrogatories to the vocational expert.

During the July 11, 2012 hearing, no questions were posed to the vocational expert. On November 7, 2012, the ALJ sent interrogatories to a different vocational expert, and to plaintiff's counsel. The vocational expert's responses were sent to plaintiff's counsel November 20, 2012. On November 28, 2012, plaintiff's counsel responded, objecting to the classification of plaintiff's welding job as PRW, and requesting an additional hearing. On December 4, 2012, plaintiff's counsel submitted his own interrogatories. Two of the three interrogatories asked for a description of the Social Security regulations with regard to the basic mental demands of competitive work. The Commissioner deemed these two interrogatories to be "inappropriate," and therefore the ALJ did not submit them to the vocational expert. However, the ALJ did

submit plaintiff's counsel's third interrogatory, which adopted the ALJ's hypothetical and included the limitations identified in the other two interrogatories. On December 11, 2012, plaintiff's counsel sent a letter withdrawing his request for an additional hearing, and objecting to the omission of his first two interrogatories. (R. 362).

Plaintiff's third interrogatory was a new hypothetical, which included the following limitation: the inability to "adequately relate to supervisors or sustain concentration, persistence and pace on a sustained basis." The vocational expert responded that with those limitations, plaintiff would not be able to perform any work. (R. 363). On December 27, 2012, the ALJ sent the vocational expert's response. On January 2, 2013, after reviewing this response, plaintiff's counsel returned the required response form, indicating that he had examined the responses, had no comments, and requested no further action. (R. 370). Plaintiff now argues that the "ALJ failed to explain how or why the omitted interrogatories were 'inappropriate,'" thus depriving plaintiff of the opportunity to fully cross-examine the vocational expert, and violating his right to due process. (Dkt. 28 at 6). Plaintiff's counsel does not, however, explain how the failure to include the two interrogatories in question prejudiced plaintiff. Id.

Social Security proceedings are non-adversarial.[1] See Sims v. Apfel, 530 U.S. 103, 111 (U.S. 2000); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b). As a result, an ALJ is not required to ask the VE for responses to every post-hearing interrogatory presented by a claimant or a claimant's attorney containing limitations inapplicable to the claimant. See Ruth v. Astrue, 369 Fed.Appx. 929, 932 (10th Cir. 2010)

---

[1] The role of cross-examination in non-adversarial disability proceedings should remain limited to avoid shifting the step five burden of proof back to the claimant. Haddock v. Apfel, 196 F.3d 1084, 1090 (10th Cir. 1999).

(unpublished).² (Dkt. 29 at 7). Moreover, a vocational expert is an expert in vocational issues, not Social Security regulations, and the two interrogatories that were not submitted to the vocational expert both asked for the vocational expert's understanding of the regulations:

1. Do the Social Security Administration's regulations state that that [sic] the basic mental demands of competitive, remunerative, unskilled work include the ability to understand, carry out, and remember simple instructions on a sustained basis?

2. Do the Social Security Administration's regulations state that the basic mental demands of competitive, remunerative, unskilled work include the ability to respond appropriately to supervision?

(R. 361). The ALJ is responsible for applying Social Security regulations, not the vocational expert. See Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996). For this reason alone, the ALJ properly declined to submit these two interrogatories.

In addition, plaintiff has failed to show, and has not argued, that cross-examination of the vocational expert using the two rejected interrogatories would have changed the evidence before the ALJ or his ultimate findings. See Glass v. Shalala, 43 F.3d 1392, 1397 (10th Cir. 1994).

Finally, the hypothetical interrogatory that was presented to the vocational expert included the limitations from the two rejected interrogatories, and the vocational expert answered that with those limitations, plaintiff would not be able to sustain work. Thus, plaintiff received the answer he sought.

Plaintiff's right to due process was not violated; therefore, the undersigned finds no due process basis on which to reverse the ALJ's decision.

**RFC**

Next, plaintiff argues that the ALJ failed to consider properly all of his impairments, specifically his non-severe impairments of left shoulder and back pain, when formulating his

---

² 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

RFC. (Dkt. 28 at 6-9). Plaintiff also argues that the ALJ "appears to adopt all of the limitations given by Anne Winkler, M.D. However, Dr. Winkler is a non-treating and non-examining medical consultant. Furthermore, her opinion is given on a checklist type form. A checklist form without a thorough explanation completed by a non-treating agency doctor does not constitute substantial evidence." Id. at 7. (citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)). Plaintiff also complains that the ALJ erred by finding that plaintiff could perform work at all exertional levels, including very heavy work. (Dkt. 28 at 8). Finally, plaintiff argues that the RFC "was overly vague," failing to define the terms "simple," "superficial," and "normal changes," and that the decision contains no indication that the vocational expert's definition of those terms matched the ALJ's definition. Id. at 9.

The ALJ discussed in detail all of plaintiff's complaints, and found that his complaints of shoulder and back pain were not severe enough to prevent him from working. (R. 15-16, 18-23) In support of this finding, the ALJ referenced normal shoulder x-rays, and normal examinations and x-rays on plaintiff's back. (R. 18-23). Further, it is not entirely accurate to say that Dr. Winkler's opinion is on a "check list form." Dr. Winkler's opinion is in the form of written responses to interrogatories and is based entirely on plaintiff's medical records. (R. 584-592). Specifically, Dr. Winkler references "alcohol/drug abuse-up to April 2011 1F, 4F, 16F; DDD [degenerative disc disease] cervical spine-mild 20F; [and] diabetes [with] poor compliance 22F." Dr. Winkler further notes that plaintiff's hepatitis C was inactive, that he had hepatitis B that resolved completely by October 2011, and that he complained of shoulder pain, but his x-rays were normal and injections helped his pain, citing Exhibits 17F and 22F. (R. 584). Dr. Winkler then completed a "Medical Source Statement of Ability to do Work-Related Activities

11

(Physical)" form supplied by the Commissioner, finding that plaintiff was able to work at all exertional levels with restrictions only on climbing due to his diabetes. (R. 587-92).

Although the ALJ found that plaintiff could perform work at all exertional levels, the heaviest exertional level jobs found at step five were medium, including a metal spraying machine operator, and an industrial cleaner. (R. 25). The remaining jobs included the light exertional work of a bottling-line attendant, a bench assembler, and a collator operator. Id. Sedentary jobs included a final assembler, and a patcher. (R. 25-26). Remanding for the ALJ to alter this finding from "all exertional levels" to "medium exertional levels" would not alter the outcome, a finding that plaintiff can perform other work at step five. See Keyes-Zachary, 695 F.3d at 1163 (discussing harmless error).

As to plaintiff's argument that the RFC is "overly vague" in that it fails to define the terms "simple," "superficial," and "normal changes," and that the decision contains no indication that the vocational expert's definition of those terms matched the ALJ's definition, the Court rejects this argument. These terms are all frequently used in the context of a Social Security disability case and they are unambiguous. See, e.g., Chapo v. Astrue, 682 F.3d 1285, 1289-91 (10th Cir. 2012) ("simple," "normal" changes), Keyes-Zachary v. Astrue, 695 F.3d 1156, 1165 (10th Cir. 2012) ("simple"), Wilson v. Colvin, 541 Fed.Appx. 869, 872 (10th Cir. 2013) ("normal changes," "simple," "superficial"), Bussell v. Astrue, 463 Fed.Appx. 779, 781-82 (10th Cir. 2012) (respond appropriately to "changes," "simple," "superficial"). Vocational experts who routinely testify at disability hearings are well aware of the definitions or meanings of the terms "simple," "superficial," and "normal changes," as are administrative law judges. The undersigned finds no error with the use of these terms.

**PRW**

Finally, plaintiff argues that the ALJ erred by finding that plaintiff could return to his past relevant work as a welder, production line. (Dkt. 28 at 9). He argues that this work does not qualify as past relevant work because it was performed longer than 15 years ago, and that the ALJ erred in finding that plaintiff could return to this job.

At step four, the ALJ must decide if plaintiff can return to his past relevant work. In this case, plaintiff is correct that the welder job was outside the 15 year window for past relevant work; however, this error is harmless. If the ALJ had properly found that plaintiff could not perform any past relevant work, because the welder, production line job is outside the 15 year window, the outcome would remain the same because the ALJ made an alternate finding at step five that there are other jobs which plaintiff can perform. See Keyes-Zachary, 695 F.3d at 1163 (discussing harmless error).

## CONCLUSION

For these reasons, the ALJ's decision finding plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 22nd day of September, 2014.

_____
T. Lane Wilson
United States Magistrate Judge